UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LISA ATENCIO,<br><br>            Plaintiff,<br><br>   v.<br><br>JOINT JEROME SCHOOL DISTRICT #261,<br><br>            Defendant. | Case No. 2:10-cv-00130-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendant Joint Jerome School District #261's Motion for Summary Judgment (Dkt. 18). Plaintiff Lisa Atencio argues that she suffers from colitis with possible Crohn's disease. She maintains her condition qualifies as a disability under the Americans with Disabilities Act. According to Atencio, the School District fired her because of her disability. Atencio asserts claims for discrimination and failure to accommodate under the ADA.

The Court heard oral argument on July 27, 2011, and took the matter under advisement. For the reasons expressed below, the Court will grant summary judgment in favor of the District.

# BACKGROUND

On September 24, 2007, Defendant Joint Jerome School District #261 hired Plaintiff Lisa Atencio as a full-time custodian. *Capps Aff.* ¶ 3, Dkt. 18-16. In March 2008, Atencio informed Payroll Specialist, Marsha Capps, that she had been diagnosed with colitis and possible Crohn's Disease. *Id.* Atencio had her medical provider fax her medical records to Ms. Capps. *Capps Aff.* ¶ 6, Dkt. 18-16. The medical records faxed to Ms. Capps did not mention Crohn's Disease, but they did mention colitis and depression. *Faxed Medical Records* at JSD 130-131 Ex. E to Nelson Aff, Dkt. 18-15. Atencio's symptoms included severe pain in her stomach, chronic diarrhea, nausea, headaches, muscle fatigue, and rectal bleeding. *Atencio Aff.* ¶ 5, Dkt. 23; *Independent Medical Evaluation* at 2, Ex. A to Cook Aff., Dkt. 22.

Pursuant to the District's policy and practice, Atencio was required to inform her supervisors of any absences and leave requests before her work shift began. *Plaintiff's Response to Defendant's Request for Admission No. 1*. On those rare occasions when it was not possible to notify a supervisor of an unexpected absence prior to her work shift, Atencio was instructed to contact her supervisor immediately thereafter. *Plaintiff's Response to RFA No. 2*.

Because of her condition, Atencio asked to miss two weeks of work in March 2008. *Atencio Aff.* ¶ 5; *Capps Aff.* ¶ 4, Dkt. 18-16. Although Atencio had not accrued sufficient sick days since her hiring in September, Ms. Capps helped Atencio obtain 77 hours of additional sick leave from the sick bank and granted Atencio's request. *Capps*

*Aff.* ¶ 4, Dkt. 18-16. But at that point Atencio had exhausted all of her sick leave until the new fiscal year began on July 1, 2008. *Capps Aff.* ¶ 7, Dkt. 18-16.

In April, however, Atencio called Elaine McLimore, a supervisor, to tell her she would be late for work because of a doctor's appointment. *Atencio Aff.* ¶ 9, Dkt. 23. At the appointment, Dr. Johnson prescribed Atencio morphine for her abdominal pain and told her to stay home to see how she would react to the morphine. *Id.* Atencio called and left a message with Ms. McLimore, informing her that she would not return to work until April 23 because of the morphine. On April 23, Atencio returned to work with a doctor's note, which cleared Atencio for work. *Id.* The District claims that Atencio failed to give her supervisor the proper notification for the absences on April 21 and 22.[1] *Capps Aff.* ¶ 8, Dkt. 18-16. The District considers Atencio's absences for those days as unexcused. *Id.*

Atencio testifies that she continued to feel lethargic, and she hurt all day after being prescribed several medications, including prednisone.[2] *Atencio Aff.* ¶ 10 & ¶ 12. The pain and lethargy made it difficult for Atencio to complete her custodial work, which

---

[1] The District states that the days she missed were April 22 and 23, and not April 21 and 22. *Capps Aff.* ¶ 9, Dkt. 18-16. The Court is unsure which dates are correct. But both Atencio and the District agree that Atencio missed two days in April.

[2] The District moves to strike portions of Atencio's affidavit, arguing that Atencio is not qualified to testify as a medical expert, that certain paragraphs are unduly vague, and others lack foundation. While Atencio is not qualified to testify about the causes of her lethargy or pain, she certainly can testify that she was taking medications and she was lethargic and in pain. Therefore, the Court disregards any medical conclusions Atencio makes, but will consider Atencio's description of her physical symptoms. As for the District's argument that certain statements are vague, the Court will take that into account when conducting its analysis.

caused Atencio to set up a meeting with Linda Adams, the District's head of Human Resources. *Id.* ¶ 13. Atencio told Ms. Adams that she had been diagnosed with possible Crohn's and that she was struggling to do the custodian's job. *Id.* Atencio asked to be transferred to a paraeducator position so she could keep her insurance and remain productive for the District. *Id.*

With assistance from Human Resources, Atencio applied for all of the positions that the District had listed open at the time. *Id.* ¶ 17. Atencio applied for seven full-time position from May 12, 2008 to July 6, 2008, as well as a job as a Social Studies teacher, a bowling coach and as an English as a second language teacher. *Id.* She was not granted an interview for any of these positions.

Still working as a custodian in July 2008, Atencio requested leave to have both a colonoscopy and an EGD on July 23, 2008. *Atencio Aff.* ¶ 26. Atencio told both her immediate supervisor, Cindy Blackmon-Moser, and Ms. McLimore that she needed this procedure and that she may miss more days because she would be put under general anesthesia. Atencio says that Ms. Blackmon-Moser told her to just put down July 23, and if a problem arose, they would know why she did not come to work. *Id.* ¶ 28. Atencio only requested July 23 off. *Id.* ¶ 29.

On Monday, July 21, 2008, Atencio had severe diarrhea and called Ms. Blackmon-Moser to tell her that she could not make her 2:00 am shift. *Id.* ¶ 28. Atencio claims she left a message, *id.* ¶ 31, but Ms. Blackmon-Moser claims she did not. *Blackmon-Moser Aff.* ¶ 5, Dkt. 18-18. The phone records show Atencio made the call. *Phone Records*, Ex. A to Atencio Aff., Dkt. 23.

**MEMORANDUM DECISION AND ORDER - 4**

On July 22, 2008, Atencio missed work again, but there is no dispute that Atencio called Ms. Blackmon-Moser and left a message stating that she would miss work that day but planned to return to work on Thursday, July 24, 2008 with a doctor's note. *Atencio Aff.* ¶ 33; *Blackmon-Moser Aff.* ¶ 7. On July 24, 2008, Atencio claims that she felt very sick after her procedure and she did not go into work and she did not call. *Atencio Aff.* ¶ 36. She felt that her absence was already excused based on her conversation with Ms. Blackmon-Moser and Ms. McLimore. *Id.* The next day she still felt sick and stayed home from work without calling but under the belief that her absence was excused. *Id.* ¶ 37. On Saturday, July 26, Atencio did not have to work; she claims that she had to go to the emergency room because she was vomiting blood. *Id.* ¶ 38. Again, on Sunday, July 27, Atencio did not have to work, but she emailed Ms. Blackmon-Moser stating that she had an appointment on Monday at 3:00 pm with the doctor and that she would get a release to return to work. Before she could return to work, however, Atencio received a call from James Fultz, head of maintenance. He terminated her employment because the District considered the July 24 and 25 absences unexcused. *Id.* ¶ 41.

At the time of her termination, Atencio had not received a definitive diagnosis for either colitis or Crohn's Disease. *Atencio Dep.* at 129-33, Dkt. 18-4. Indeed, the medical records she provided JSD while she was employed do not even mention Crohn's Disease and only indicate that her doctor could not exclude the possibility of colitis. *Faxed Medical Records* at JSD 129-32, 154, 210, 205-07, 209, Ex. E to Nelson Aff., Dkt. 18-5. Moreover, Atencio's doctor never recommended any workplace restrictions. *Atencio Dep.* at 42-43, Dkt. 18-4

On September 27, 2010, almost two years after her termination, Atencio's bloodwork showed a pattern consistent with a diagnosis of Crohn's Disease. *Diagnostics Report*, Ex. D to Atencio Aff., Dkt. 23.  Also, on February 17, 2011, Atencio underwent an independent medical evaluation with Dr. Gary L. Cook, who opined that she was disabled at the time Atencio was fired by the District. *Independent Medical Evaluation* at 8-9, Ex. A to Cook Aff., Dkt. 22.  He was not her treating physician at the time of her termination.

In reaching this conclusion, Dr. Cook summarized Atencio's complaints.  First, Dr. Cook noted, Atencio complained of recurrent diarrhea that was often bloody.  This would occur four to five times daily and would often necessitate a stay of 10 to 15 minutes in the restroom.  Sometimes the unexpected diarrhea would cause Atencio to soil her clothing.  The unexpected diarrhea would limit her ability to shop or bank because she feared she would have unexpected bowel movement and not be able to reach the bathroom. *Independent Medical Evaluation* at 8-9, Ex. A to Cook Aff., Dkt. 22.

Atencio also complained of severe abdominal pain, nausea, vomiting, muscle and joint pain, fever, depression, inability to sleep, and migraine headaches.  According to Dr. Cook, "her condition significantly degraded her ability to enjoy normal activities such as eating."  Eating would often elicit nausea followed by severe vomiting.  Dr. Cook described the nausea as "protracted and resulted in retching, which persisted for days."  The prolonged vomiting would cause sore throats and often "resulted in esophageal damage/trauma with resultant blood vomiting.  Her nausea and vomiting require her to avoid certain foods, making dining out "problematic."  Dr. Cook also noted that the

fatigue Atencio experiences prevented her from taking walks, playing volleyball, softball, hiking, biking, or playing with children. The pain Atencio experienced made it difficult for her to concentrate and for her to enjoy simple activities such as reading, watching movies, or carrying on a conversation. *Independent Medical Evaluation* at 8-9, Ex. A to Cook Aff., Dkt. 22.

## LEGAL STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002); *see also* Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could

be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id*. (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

In order to preserve a hearsay objection, "a party must either move to strike the affidavit or otherwise lodge an objection with the district court." *Pfingston v. Ronan Engineering Co.,* 284 F.3d 999, 1003 (9th Cir. 2002). In the absence of objection, the Court may consider hearsay evidence. *Skillsky v. Lucky Stores, Inc.,* 893 F.2d 1088, 1094 (9th Cir. 1990).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir.1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

## ANALYSIS

1. **Retroactive Application of the ADAA**

As a threshold matter, the Court notes that neither side has sought to answer the question of whether the ADA Amendments Act of 2008 (ADAAA), which became effective on January 1, 2009, applies retroactively to this case.

"The ADAAA explicitly rejects several Supreme Court decisions that defined 'disability' more narrowly than many of the ADA's original Congressional proponents had intended." *Rohr v. Salt River Project Agricultural Imp. and Power Dist.*, 555 F.3d 850, 861 (9th Cir. 2009). Those decisions include *Sutton v. United Air Lines, Inc.,* 527 U.S. 471(1999), and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002). By rejecting *Sutton* and *Toyota Motor*, Congress expands the class of individuals who are entitled to protection under the ADA. *Rohr*, 555 F.3d at 853. "Indeed, Congress signifies that as a result of these Supreme Court cases, 'lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities.'" *Id.* (quoting Pub.L. No. 110-325, 122 Stat. 3553 (2008)).

The issue of retroactive application of the ADAAA remains an open question in the Ninth Circuit. *Id*. In *Rohr*, the Ninth Circuit found no need to decide whether the ADAAA applied retroactively because the panel reached its "conclusions separate and apart from the ADAA," finding that the plaintiff was disabled. *Id.* "Nevertheless, because the ADAAA sheds light on Congress' original intent when it enacted the ADA," the Court briefly discussed the amendment and found that "the original congressional

intent as expressed in the amendment" bolstered its conclusion that the plaintiff was disabled. *Id.*

The majority of courts that have tackled this issue have held that the ADAAA does not apply retroactively because of the absence of congressional intent to give the amendments retroactive effect. *Milholland v. Sumner County Bd. of Educ.,* 569 F.3d 562, 565-66 (6th Cir. 2009); *EEOC v. Agro Distr., LLC,* 555 F.3d 462, 469 n. 8 (5th Cir. 2009); *Kiesewetter v. Caterpillar, Inc.,* 295 Fed.Appx. 850, 851 (7th Cir. 2008). A presumption against retroactive application applies when the new legislation would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Products,* 511 U.S. 244 (1994).

In *Milholland*, for example, the Sixth Circuit – although recognizing that Congress enacted the ADAAA to reinstate a broad scope of protection available under the ADA – found that Congress' intent to "restore" protections "does not by itself, reveal whether Congress intends the [ADAAA] to apply retroactively." 569 F.3d at 566 (citations omitted). Finally, the court noted that the ADAAA, if applied retroactively, "attaches new legal consequences to events completed before its enactment" and, therefore, concluded that the ADAAA does not apply retroactively to pre-amendment conduct. *Id.* at 567.

The Court agrees with the reasoning of *Milholland* and will therefore follow the principle that the ADAAA does not apply retroactively. Accordingly, the Court will analyze Atencio's disability claim under the pre-amended ADA and applicable case law.

## 2. Discrimination Under the ADA

To state a prima facie case under the ADA, a plaintiff must demonstrate that: "(1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job she holds or seeks; and (3) that she suffered an adverse employment action because of her disability." *Braunling v. Countrywide Home Loans Inc.,* 220 F.3d 1154, 1156 (9th Cir. 2000); *Nunes v. Wal–Mart Stores, Inc.,* 164 F.3d 1243, 1246 (9th Cir. 1999). Here, the District argues that Atencio did not establish a prima facie case because she failed to show she was disabled during the relevant time period.

### A. Disability Under the ADA

The ADA defines 'disability' as the following: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. sec. 12102(2). "[T]hat the Act defines 'disability' 'with respect to an individual' makes clear that Congress intended the existence of a disability to be determined in [a] case-by-case manner." *Toyota Motor Mfg. Ky., Inc. v. Williams,* 534 U.S. 184, 199, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (internal citation omitted).

ADA regulations define "physical impairment" as "any physiological disorder or condition ... affecting one or more of several body systems ... [including] digestive ... [and] ... genito-urinary." 29 C.F.R. § 1630.2(h)(1). Atencio's purported condition, colitis with possible Crohn's Disease, is defined in the American Medical Association Encyclopedia of Medicine as a "serious intestinal disorder" of unknown origin which is

characterized by rectal bleeding, diarrhea and stomach pains. *AMA Encyclopedia of Medicine, s.v.* "colitis" (1989). The District contends, however, that Atencio was not physically impaired while employed with the District because her hospital records from that time period do not show that she was given a definitive diagnosis of either Crohn's Disease or colitis. The District points to Atencio's treatment notes from September 2008, which contain a statement that Atencio had an endoscopy earlier that year indicating "questionable colitis." *Atencio Treatment Notes* at Ex. D, Pt. 1, PLTF 144, Dkt. 18-7. The District further argues that Atencio's treatment notes from November 2008 state that "she has no evidence of colitis on colonoscopy." *Id.*

While Atencio's doctor did not provide a definitive diagnosis of colitis, Atencio's treatment notes from May and June contain statements suggesting that the doctor believed Atencio suffered from colitis and possible Crohn's Disease. The notes also contained multiple references to Atencio's diarrhea, watery and/or bloody stools, and severe pain in the abdomen. *Medical Records* at PLTF 176-180, Ex. D to Nelson Aff., Dkt. 18-8. In addition, Atencio testified that her pain was severe. From this, sufficient evidence exists to create an issue of fact that Atencio suffered from an impairment that affected her digestive system. *See, e.g., Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005) (holding that plaintiff's testimony, without medical evidence, may suffice to establish a genuine issue of material fact).

Having determined that Atencio suffered from a physical impairment, the next question is whether her affliction "substantially limited" one or more of her "major life activities." The 2006 ADA statute does not define "substantially limits." But according

to the Supreme Court, "'substantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree'....The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." . *Toyota,* 534 U.S. at 196-7. The Court also noted that legislative intent demonstrated that "these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* at 197; *Wong v. Regents of Univ. of Cal.,* 410 F.3d 1052, 1064 (9th Cir. 2005). Based on these considerations, the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives" and the "impairment's impact must also be permanent or long term." *Toyota,* 534 U.S. at 197.

To prove that her condition constituted a disability, Atencio submitted the report of Dr. Cook, who opined that Atencio was disabled at the time of her termination. Dr. Cook was not her treating physician but instead based his opinion on Atencio's description of her symptoms during the relevant time period. Atencio reported to Dr. Cook that she suffered from a variety of symptoms at the time or her termination, including severe diarrhea, nausea, vomiting, abdominal pain, fatigue, and fever. Specifically, according to Atencio, she had to take frequent bathroom breaks and suffered embarrassment with unexpected soiling of her clothing and frequent flatulence. *Independent Medical Evaluation* at 8-9, Ex. A to Cook Aff., Dkt. 22. She further reported that lifting heavy object would often result in involuntary evacuation of her bowels. Based on her complaints, Dr. Cook found that Atencio's symptoms were so

severe as to interfere with her ability to perform major life activities such as her ability to work, walk, read, hike, eat, shop, socialize, go to the restroom, concentrate or think, and procreate.

Atencio's testimony and Dr. Cook's report, which at summary judgment must be accepted as true, makes clear that Atencio's symptoms impaired her ability to perform her ability to perform daily tasks to some degree. But this evidence does not establish that the difficulties experienced by Atencio were sufficiently severe to rise to the level of a substantial limitation. To qualify as disabling, for example, a limitation on the ability to work means Atencio must have been significantly restricted in her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *See, e.g., Thompson v. Holy Family Hosp.*, 121 F.3d 537, 540 (9th Cir. 1997) (citing 29 C.F.R. § 1630.2(j)(3)(i)). Yet, Atencio submits no evidence on this issue. In fact, the evidence on the record demonstrates that Atencio believed she could perform not only her position as a custodian, but also positions as a paraeducator, a Social Studies teacher, and a bowling coach. And her doctor never imposed any work-related restrictions.

With respect to such activities as walking, reading, concentrating, socializing, procreating, shopping, and hiking, Atencio fails to explain how her condition prevents or severely restricts her from doing these activities. Instead, Atencio makes only vague assertions of difficulty performing some daily activities. Vague and conclusory assertions of difficulty performing a major life activity do not create a genuine issue of material fact. *See, e.g., Fredricksen v. United Parcel Service, Co.*, 581 F.3d 516,

522 (7th Cir. 2009). Notably, Atencio does not describe how much her condition limits her ability to walk or hike or shop or socialize. Presumably, she can physically do all of these activities – with the caveat that without access to a nearby restroom she could suffer embarrassment or discomfort. Moreover, it appears from the record that Atencio's symptoms are intermittent. Based on the evidence submitted, the Court cannot find that this need prevented or significantly restrict Atencio from walking, or hiking, or shopping or socializing.

Atencio also makes generalized complaints that she suffers from sleep deprivation, and therefore she "often" lacked the energy to perform daily household tasks such as cleaning, cooking, shopping, and yard work. *Independent Medical Evaluation* at 8-9, Ex. A to Cook Aff., Dkt. 22. The sleep deprivation and the chronic pain, according to Atencio, made her irritable and degraded her ability to interact with her children. *Id.* In addition, Atencio maintains she suffered from migraine headaches, and during an acute phase of her flare-ups, her pain levels were so severe that she could not concentrate. *Id.* Again, however, other than vague and conclusory statements, the record is devoid of specific evidence to indicate the extent of her limitations and how often she suffered from these problems. *Fraser,* 342 F.3d at 1043-44 ("The problem is that Fraser does not show that these effects occurred often enough to constitute a substantial limitation."). For these reasons, the Court finds that Atencio was not disabled as a matter of law.

This conclusion is consistent with what other courts have decided regarding whether colitis constitutes a disabling condition. In *Ryan v. Grae & Rybicki, P.C.*, a plaintiff with severe colitis claimed she was disabled under the ADA. 135 F.3d 867, 868,

873 (2d Cir. 1998). She "experienced frequent and painful diarrhea, stomach cramps, and rectal bleeding." *Id.* at 868. And in the period prior to the plaintiff's termination, her symptoms markedly worsened: "During this period, Ryan suffered through a nearly continuous cycle of three to four days of constipation followed by three to four days of erratic, bloody and painful diarrhea. Ryan claims that if she could not get to a bathroom within five to ten seconds of an attack she would soil her clothes. *Id.* Despite these symptoms, the Second Circuit found that the plaintiff's condition did not substantially limit either her ability to eliminate waste or care for herself. *Id.* at 871.

While determining whether an individual is disabled under the ADA is an individualized inquiry, the Court finds *Ryan* instructive. It is true that Atencio had to use the restroom frequently, she had to be careful of her diet, and she had to be careful when doing an activity, such as walking, hiking, or shopping, to note where the restroom was. Although Atencio's situation is quite unfortunate, the fact that she has to frequently use the restroom and experiences abdominal pain and headaches during flare-ups does not establish that Atencio was substantially limited in her ability to engage in any major life activities such as walking, hiking, shopping, eating, procreating, or communicating.

    **B.**    **Regarded as Disabled.**

Atencio argues that even if her impairment does not substantially limit a major life activity, she is, nonetheless, disabled simply because the District regarded her as having an impairment "that substantially limits one or more ... major life activities." 42 U.S.C. § 12102(2)(A) & (C).

The Court disagrees. First, Atencio fails to explain what major life activity the District believed was substantially limited by her perceived condition. Instead, Atencio argues that the District must have regarded Atencio as disabled because Marsha Capps helped Atencio in obtaining additional sick leave and "admitted" to never denying Atencio's requests for time off. But the District's awareness of Atencio's medical issues does not establish that it regarded her as being disabled. *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 798 (9th Cir. 2001) (stating that "awareness" of physical restrictions does not establish that an employer regards its employee as disabled). And even if the help the District provided to Atencio could be construed as accommodations, it does not mean that the District conceded that Atencio is disabled under the ADA or that it regards Atencio as disabled. *Id.*

Because the Court has determined that Atencio was not substantially limited in any major life activity at the time of her termination, the Court will not address whether the District failed to reasonably accommodate Atencio by transferring her to another position, or terminated her because of a disability.

## ORDER

**IT IS ORDERED that** Defendant's Motion for Summary Judgment (Dkt. 18) is **GRANTED**.DATED: August 8, 2011



B. Lynn Winmill
Chief Judge
United States District Court